UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAGNUS PACIFIC CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br><br>Plaintiff-Intervener,<br><br>v.<br><br>ADVANCED EXPLOSIVES DEMOLITION, INC., an Idaho corporation,<br><br>Defendant. | Case No. 2:13-CV-0060-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court has before it Plaintiff Magnus Pacific Corporation's Motion for Reconsideration (Dkt. 40) of this Court's Order granting Defendant Advanced Explosives Demolition partial judgment on the pleadings (Dkt. 39). In the interest of avoiding further delay and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Court will

**MEMORANDUM DECISION AND ORDER - 1**

address and resolve this motion without a hearing. Therefore, having carefully reviewed the record, the Court enters the following Order.

## BACKGROUND

Plaintiff Magnus Pacific Corporation ("Magnus Pacific") is a remediation and geotechnical contractor serving private and public sector clients. Defendant Advanced Explosives Demolition, Inc. ("AED") is an explosives demolition contractor. In 2012, Magnus Pacific contacted AED regarding demolishing two buildings as part of an ongoing remediation project at the Boise White Paper ("BWP") plant in St. Helens, Oregon. On April 20, 2012, the parties entered into a contract (hereinafter "demolition services contract") for the implosion of a recovery boiler located at the BWP site. On August 14, 2012, the recovery boiler was imploded. The implosion caused significant damage to other structures at the plant.

In February 2013, Magnus Pacific filed the instant suit against AED, bringing claims for breach of contract, negligence, strict liability, intentional misrepresentation, and negligent misrepresentation. On October 7, 2013, AED filed a Motion for Judgment on the Pleadings, seeking dismissal of Magnus Pacific's strict liability and negligent misrepresentation claims. (Dkt. 28.) Briefing on AED's motion was completed by November 18, 2013. On May 5, 2014, this Court entered an order granting AED's Motion for Judgment on the Pleadings and dismissing Magnus Pacific's strict liability and negligent misrepresentation claims

with prejudice. (Dkt. 39.) Magnus Pacific here seeks reconsideration of the Court's decision with respect to its strict liability claim, but does not challenge the Court's dismissal of its negligent misrepresentation claim.[1]

## STANDARD OF REVIEW

Neither the Federal Rules of Civil Procedure nor the Local Rules provide for a motion to reconsider. However, the Ninth Circuit has stated that motions to reconsider should be treated as motions to alter or amend under Federal Rule of Civil Procedure 59(e). *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1419 (9th Cir. 1984). Reconsideration of a final judgment under rule 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations and citation omitted). As a result, the Ninth Circuit has identified three reasons sufficient to warrant a court's reconsideration of a prior order: (1) an intervening change in controlling law; (2) the discovery of new evidence; or (3) the need to correct clear error. *Id.*; *see also 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Whether or not to grant reconsideration is committed to the sound discretion of the court. *Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046

---

1 Magnus Pacific conceded dismissal of its negligent misrepresentation claim was appropriate in its response to AED's Motion for Judgment on the Pleadings. (Dkt. 32, p. 2.)

(9th Cir. 2003) (citing *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000)).

## ANALYSIS

Magnus Pacific seeks reconsideration of the dismissal of its strict liability claim on the basis of newly discovered evidence. Specifically, Magnus Pacific argues the recent deposition of AED's vice president establishes, or at least raises a genuine issue of material fact to suggest, that the parties agreed strict liability would apply to AED's blasting operations. This Court granted AED judgment on the pleadings with respect to Magnus Pacific's strict liability claim, primarily because the parties agreed Idaho law applies to this dispute and Idaho does not recognize strict liability for claims involving personal services absent a relevant product. *Hoffman v. Simplot Aviation, Inc.*, 539 P.2d 584, 587 (Idaho 1975); *Britton v. Dallas Airmotive, Inc.*, 2010 WL 797177, at *17 (D. Idaho 2010).

Although it conceded the application of Idaho law to this dispute, Magnus Pacific, in its response to AED's Motion for Judgment on the Pleadings, argued that the demolition services contract explicitly recognized that AED's services were subject to strict liability, citing section GC4. (Dkt. 32, pp. 3-4.) This provision states, in relevant part:

> In consideration of the strict liability nature of many of AED's operations, the parties hereto agree that this agreement shall be governed and interpreted in accordance with laws of Kootenai County, ID and subject to prime agreement.

**MEMORANDUM DECISION AND ORDER - 4**

(Dkt. 1, p. 14.)

Magnus Pacific did not argue that the demolition services contract was ambiguous with respect to strict liability, but instead contended that AED expressly conceded, in the aforementioned provision, the strict liability nature of its business activities in its contract with Magnus Pacific. (Dkt. 32, pp. 3-4.) Because other jurisdictions impose strict liability for demolition work while Idaho does not, and because the contract contained an Idaho choice of law provision, the Court interpreted section GC4 as simply insulating AED from the strict liability another jurisdiction's law may impose. (Dkt. 39, pp. 9-10.)

In its Motion for Reconsideration, Magnus Pacific highlights an additional provision of the demolition services contract (not referenced in the briefing on the dismissal motion) which supports its contention that AED agreed to be subject to strict liability. Specifically, in section GC13 of the demolition services contract, the parties agreed:

> Due to AED's legal exposure to the strict liability nature of explosives handling operations, it is mutually agreed that AED will have right of review/refusal on implosion related communications with Owner, regulatory representatives, security forces, city agency, community groups and the media.

(Dkt. 1, p. 16.)

<mark>
</mark>

Although the parties agreed to the application of Idaho law, which does not recognize strict liability in this context, they also appear to have agreed that AED's demolition services were subject to strict liability. The Court thus finds that the demolitions services contract is ambiguous when GC13 of the demolition services contract is read in conjunction with section GC4.

More importantly, the recent deposition testimony of AED's Vice President, Eric Kelly ("Mr. Kelly") suggests that AED in fact agreed strict liability would apply to its operations, and that the choice of law provision of GC4 was not meant to isolate AED from strict liability, but was instead included to ensure AED could defend any actions against it in Idaho.[2] Mr. Kelly is personally involved in developing the terms of AED's contracts, including the divvying up of the parties' respective responsibilities. (Dkt. 40-3, pp. 5-6, 12.) During his deposition, Mr. Kelly was questioned about sections GC4 and GC13 of the demolition services contract, as well as about the strict liability nature of AED's operations in general.

When questioned about the choice of law provision of section GC4, Mr. Kelly explained:

> There's a strict liability of our business, so we keep it -- it's better for us to defend ourselves in our own backyard where people are more familiar with us and what we do in our business. And it's a cost of evaluation also. Because for me, you know, to -- I'll give you an example. We're going through a --

---

2 Mr. Kelly's deposition was not taken until April 15, 2014, five months after the briefing on AED's Motion for Judgment on the Pleadings was completed.

> a lawsuit with a contractor out of Illinois…and I got to go to Illinois to fight it. And that's -- it's not good not to fight in your own backyard.

(Dkt. 40-3, p. 9.)

When pressed further regarding the meaning of section GC4, Mr. Kelly responded:

> GC4…in consideration of the strict nature of our operations. It's not just pushing the button and the blasting. It's the preparation, everything that's involved in our operation, driving to the job site with the explosives in the vehicle. There's a lot of liability that, I mean -- I can't explain it any different…it's because we understand that one of the hardest things for us to defend on is this type of liability, and we prefer to do it in our backyard.

(*Id.*, p. 10.)

Finally, when asked what portions of AED's work on the BWP demolition project were not subject to strict liability, Mr. Kelly responded, "Nothing…it's all strict liability – it's all strict liability for what AED is responsible for." (*Id.*, p. 11.) As Magnus Pacific notes, Mr. Kelly's testimony creates, "at the very least, a disputed issue as to the veracity and tenability of Magnus Pacific's strict liability claim." (Dkt. 40-1, p. 5.)

In opposing Magnus Pacific's Motion for Reconsideration, AED suggests Magnus Pacific misconstrued Mr. Kelly's testimony, and that Mr. Kelly nowhere conceded in his deposition that AED's work is subject to strict liability. (Dkt. 41, p. 3.) This contention is unavailing given Mr. Kelly's assertion that everything AED was responsible for on the BWP project was subject to strict liability. (Dkt. 40-3, p. 11.) AED also argues that Mr. Kelly does not have authority to decide which legal

**MEMORANDUM DECISION AND ORDER - 7**

standards apply to his business operations. (Dkt. 41, p. 3.) However, as he testified in his deposition, Mr. Kelly and his wife are AED's only employees, and are primarily responsible for developing the terms of AED's contracts. (Dkt. 40-3, pp. 4-6.) As such, Mr. Kelly was in the position to determine the legal standards included within the demolition services contract. Further, although a federal court may not enforce contracts which violate public policy or are illegal, AED does not argue, and does not cite any cases to suggest, that allowing parties to agree to strict liability in the context of personal services would be either violative of Idaho's public policy or illegal. "Unless in circumstances affronting public policy, it is no part of the business of the courts to decline to give effect to contracts which parties have freely and deliberately made." *Jesse v. Lindsley*, 233 P.3d 1, 6 (Idaho 2008) (internal quotations and citation omitted).

Finally, AED suggests this Court had the opportunity to analyze the relevant contractual provision (GC4) and correctly found it unambiguous. (Dkt. 41, p. 4.) However, in the briefing on the Motion for Judgment on the Pleadings, the parties did not highlight, and the Court admittedly did not review, section GC13 of the demolition services contract.[3] As explained above, when read in conjunction, sections GC4 and GC13 render the demolition services contract ambiguous. That

---

3 However, the demolition services contract was attached to Magnus Pacific's Complaint, and was thus a part of the record when the Court dismissed Magnus Pacific's strict liability claim.

AED argues the demolition services contract unambiguously disclaims strict liability while Magnus Pacific claims the contract unambiguously adopts strict liability supports the Court's finding that the contract is ambiguous. *Bakker v. Thunder Spring-Wareham, LLC*, 108 P.3d 332, 337 (Idaho 2005) (a contract is ambiguous if it is reasonably subject to conflicting interpretations) (citing *Lamprecht v. Jordan*, LLC, 75 P.3d 743, 746-47 (Idaho 2003)).

Whether a contract is ambiguous is a question of law. *Id*. However, if a contract is found ambiguous, its interpretation is a question of fact. *Id*. When a contract is ambiguous, evidence of all the surrounding facts and circumstances is admissible to prove the parties intent.[4] *Gardner v. Fliegel*, 450 P.2d 990, 994 (Idaho 1969). Mr. Kelly's recent deposition and his statements regarding AED's intent are thus relevant. In light of such testimony, the Court finds reconsideration of its order granting AED judgment on the pleadings is necessary, and that Magnus Pacific's strict liability claim was prematurely dismissed.

---

4  As AED notes, Magnus Pacific did not argue the demolition services contract was ambiguous in its opposition to AED's Motion for Judgment on the Pleadings. Although a motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation, *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), the Court finds the deposition of Mr. Kelly, which was not taken until five months after the briefing on the dismissal motion was complete, constitutes compelling new evidence which necessitates reconsideration of the dismissal of Magnus Pacific's strict liability claim.

# ORDER

Magnus Pacific's Motion for Reconsideration (Dkt. 40) is **GRANTED**. The Court's Order granting judgment on the pleadings (Dkt. 39) is **VACATED** with respect to Magnus Pacific's strict liability claim, and Magnus Pacific's claim for strict liability is reinstated. The Court's Order (Dkt. 39) remains in effect with respect to Magnus Pacific's negligent misrepresentation claim.

SO ORDERED.

DATED: July 15, 2014

Edward J. Lodge
United States District Judge